140 Ind. App. 267 (1966)
216 N.E.2d 857
FIDELITY & CASUALTY CO. OF N.Y.
v.
INDIANA NATIONAL BANK ET AL.
No. 20,257.
Court of Appeals of Indiana.
Filed June 1, 1966.
Rehearing denied November 15, 1966.
Transfer denied February 7, 1967.
*268 Hugh E. Reynolds, Hugh E. Reynolds, Jr., and Locke, Reynolds, Boyd & Weisell, all of Indianapolis, for appellant.
William K. Kunz, William A. Waddick, Kunz & Kunz and Donald Beskerick, all of Indianapolis, and McNutt, Hurt & Blue and Charles Foley, both of Martinsville, all for appellees.
CARSON, J.
This was an action instituted in the Morgan Circuit Court by the Indiana National Bank of Indianapolis, against the Metropolitan School District of Martinsville, Indiana. The plaintiff's complaint alleged a right to the balance due on a construction contract because of an assignment by one Carey to the extent of $18,293.09 for money loaned by it to Carey, hereinafter referred to as the contractor, to be used by him for the payment of material and services performed by the contractor on the Centerton School contract; that the school district had retained the sum of $25,000.00 under the terms of the contract as a reserved percentage.
Plaintiff also filed a second paragraph of complaint against the defendant appellant for the same sum on a performance bond executed by the Fidelity and Casualty Co. of New York, as surety, hereinafter called the bonding company, for the performance by the contractor of the Centerton contract. To paragraph 1 of the plaintiff's complaint the defendant bonding company filed answer in three paragraphs. The first being in denial under Rule 1-3; the second paragraph alleging that the bonding company expended the sum of $49,270.00 for the completion of the contract, that the plaintiff bank was paid the sum of $50,031.24 under its purported assignment; and a *269 request that the plaintiff account for its alleged expenditures of $58,031.24. That the defendant recover from the plaintiff the sum of $49,270.00. The defendant bonding company also filed a third paragraph of answer seeking recovery from the Metropolitan School District of $23,089.20. Similar answers in three paragraphs were filed to paragraph two in the plaintiff's complaint.
The defendant Metropolitan School District filed answer under Rule 1-3 and admitted that it had in its possession the sum of $25,141.50. There were replies filed to the various answers but the issues were basically as formed by the above pleadings.
The evidence shows that the contract with the school district was entered into on the 13th day of December, 1955; that on the 19th day of December, 1955, the contractor's bond for construction was executed and filed; that on the 21st day of December the assignment to the Indiana National Bank of Indianapolis, Indiana, was executed and a short time later the school board notified of the assignment; that on the 12th day of January, 1956, and at various times subsequent thereto the plaintiff loaned the contractor various sums of money for which the plaintiff was reimbursed from time to time by partial payment from the school board; that the sum for which the plaintiff sued was the balance which has not been paid.
The contractor defaulted on the contract and the defendant appellant bonding company was required to expend the sum which it sued on for the completion of the contract.
The plaintiff requested special findings of fact and conclusions of law.
The court found that immediately prior to default by the contractor he presented a certification to the school board for the sum of $12,440.35 which was evidenced by a promissory note and that said sum was advanced to the contractor by the plaintiff bank; that said sum was disbursed by the *270 contractor in the following manner; $10,687.10 on the Centerton contract which included $5,000.00 paid to the Plumming Supply Co. and applied by it to an older indebtedness of the contractor; $1,862.85 toward the payment of general business expenses, and $1,314.00 for a personal draw of the contractor; that the bonding company paid material and labor claims in excess of $12,701.15; that the plaintiff bank was entitled to the sum of $12,040.35 and the defendant appellant bonding company was entitled to $12,701.15.
That special findings of fact 15, 16, 17 and 18 read as follows:
"15. That during the period of time of performance of the Centerton contract, Robert Carey was also performing work in connection with contracts with the Lowell School in Marion County, the Pendleton School in Madison County, and Montpelier School in Blackford County, and that each of these contracts were for a public school project and that on each of these contracts the defendant The Fidelity and Casualty Company of New York had executed Contractor's Bonds guaranteeing the faithful performance of such contracts and payment of the debts incurred by Carey under said contracts.
16. That the funds loaned by the Indiana National Bank from the date of the Centerton Contract were used by Carey in the performance of his contracts with the various school units referred to in finding No. 15 and on the Centerton contract toward the payment of labor, material, general business expenses, and personal draw for Carey; and that the Indiana National Bank did not allow Carey to dissipate the funds received by the bank from the Centerton contract to the detriment of the Fidelity and Casualty Company of New York.
17. That the Indiana National Bank of Indianapolis is entitled to be paid from funds held by the Metropolitan School District of Martinsville the sum of $12,440.35.
18. That the Fidelity and Casualty Company of New York is entitled to be paid from funds held by the Metropolitan School District of Martinsville the sum of $12,701.15."
Upon its findings of fact the court stated four conclusions of law which read as follows:

*271 "1. That the Law is with the plaintiff on Paragraph 1 of its Amended Complaint, and that the Indiana National Bank of Indianapolis is entitled to recover of and from the Metropolitan School District of Martinsville, Indiana, the sum of $12,440.35 from said balance held by the Metropolitan School District of Martinsville under the Centerton contract.
2. The Indiana National Bank of Indianapolis is not entitled to recover under Paragraph 11 of its Amended Complaint from the Fidelity and Casualty Company of New York having recovered under Paragraph 1 of its Amended Complaint.
3. The Fidelity and Casualty Company of New York is entitled under the affirmative relief prayed for in its answer to recover of and from the Metropolitan School District of Martinsville out of the balance held by said School District on the Centerton contract the sum of $12,701.15.
4. That the law is against the defendant The Fidelity and Casualty Company of New York on the affirmative relief prayed for in its answers against the plaintiff and the Fidelity and Casualty Company of New York is not entitled to recover from the Indiana National Bank of Indianapolis."
The defendant appellant bonding company filed a motion for new trial setting out six specifications of error. The first one being the decision of the court is contrary to law and which presented to us the errors urged in the defendant appellant's argument. The sole assignment of error is that the court erred in overruling the motion for new trial. The specification in the motion for new trial that the decision of the court is contrary to law required us to consider the evidence and all reasonable inferences that could be drawn therefrom most favorable to the appellee and determine whether or not reasonable minded men would have arrived at a contrary result. Pokraka v. Lummus Co. (1952), 230 Ind. 523, 104 N.E.2d 669. Defendant-appellant in support of its argument that the findings and decisions of the court are contrary to law argues the rule as laid down in the case of Southern Surety Co. v. Merchants, etc. Bank (1931), *272 203 Ind. 173, 176 N.E. 846. In that case the court said at page 192:
"Appellee argues under its first point that appellant is not entitled to the reserved percentages of the highway funds, for the reason that it does not appear that appellant has paid any of the debts for its principal, and that, therefore, the rules of subrogation do not apply. Practically all the money in dispute herein consists of retained percentages, as provided by § 8396 Burns' 1926, Acts 1907 p. 572, and also by the road construction contracts herein, which provide that: `Payments are to be made at such time, and in such manner, and in such amounts, as is provided by said laws and in the specifications for the construction of said work and as further provided in this contract. But second party before it shall be entitled to receive the final payment for the construction of said improvement shall have paid any and all bills for materials, labor, tools, implements, teams and other things needful or necessary in doing such work and shall so show to the satisfaction of the first party.' The money now in controversy is in the hands of the county by virtue of the above provisions of the statute and conditions in the construction contracts. The percentages reserved by the county out of each estimate served to secure the county against any loss it might sustain on account of the non-performance of the contract, and when Baker, Agerter and Thompson, Incorporated, abandoned its contracts, the county had a right to hold this fund to secure itself against any damages that might have resulted from such nonperformance. This right dates from the time the contract was entered into, and it, therefore, follows that, until the claims for labor and materials are paid, the county's right to the fund is superior to that of the bank claiming by an assignment from the contractor. New Amsterdam Casualty Co. v. City of Astoria (1919), 256 Fed. 560; Prairie State Bank v. United States (1896), 164 U.S. 227, 17 Sup. Ct. 142, 41 L.Ed. 412; Wasco County v. New England, etc., Ins. Co. (1918), 88 Ore. 465, 172 Pac. 126, L.R.A. 1918D 732, Ann. Case. 1918E 656. The surety on a contractor's bond is entitled to the same protection. It is thus stated in the Wasco County Case, supra, as follows: `The reserved fund is as much for the indemnity of the surety as it is for the security of the owner for whom the work is to be performed and an equity in such reserved fund is raised in behalf of the surety.'
The contracts in this case being for public improvements, *273 persons taking assignments of funds from the contractor are bound to take notice, first, of the terms of the contract, second, that the contract is accompanied by the bond of a surety, and likewise of the undertaking of the surety, and third, that the reserved fund is for the indemnity of the surety as well as that of the county."
We note that our Supreme Court suggested that the assignee bank might be entitled to recover upon a showing that the money which it loaned the contractor was applied to the obligation of the particular job and thereby reduced the surety company's responsibility in completing the contract after default. In this connection attention is invited to the language of the court in Southern Surety Co. v. Merchants, etc. Bank, supra, at pages 196 and 197.
Under the authority of the above case we conclude that findings 15, 16, 17 and 18 are contrary to law for the reason that said findings do not conclusively show that the money loaned by the appellee bank was used to discharge debts for which the surety might have been liable and that the evidence in the record does not support the mathematical division of funds as set out in special findings 17 and 18. That therefore the court's conclusion of law number 1 is contrary to law; that the judgment of the court is therefore contrary to law and should be reversed and this cause remanded to the trial court with instructions that the appellant's motion for new trial be granted; that the trial court re-state its findings of fact and conclusions of law not inconsistent with this opinion.
Wickens, P.J., Prime and Faulconer, JJ., concur.
NOTE.  Reported in 216 N.E.2d 857.