WILLIAM BAGWELL v. CHRYSLER CORPORATION.

[No. 2-1074A238. Filed February 17, 1976. Rehearing denied March 10, 1976. Transfer denied August 23, 1976.]

J. *Conrad Maugans, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellant.

*Edward J. Ohleyer, James R. Fisher, Ice Miller Donadio & Ryan,* of Indianapolis, for appellee.

SULLIVAN, J.—Appellant William Bagwell (Bagwell) appeals from an order of the Full Industrial Board dismissing his Application for Review of Award On Account of A Change in Conditions.

Bagwell presents three questions for our determination:

(1) Was his application filed within the applicable period of limitation?

(2) Was his application for benefits by reason of changed condition, i.e., "total disability", a petition for increased permanent partial impairment and thus barred by a one year limitation period or was it governed by the two year limitation applicable to other claims for change or modification?

(3) Do the different time limitations for requesting an increase of permanent partial impairment and for requesting any other modification of an award constitute an unconstitutional denial of equal protection?

The statute governing the time limitations within which "change of condition" applications may be filed is § 45 of the Workmen's Compensation Act, Ind. Ann. Stat. § 22-3-3-27 (Burns Code Ed. 1974):

"The power and jurisdiction of the Industrial Board over each case shall be continuing and from time to time, it may, upon its own motion or upon the application of either party, on account of a change in conditions, make such modification or change in the award, ending, lessening, continuing or extending the payments previously awarded, either by agreement or upon hearing, as it may be deemed just, subject to the maximum and minimum provided for in this Act [22-3-2-1—22-3-6-3].

Upon making any such change, the board shall immediately send to each of the parties a copy of the modified award.

No such modification shall affect the previous award as to any money paid thereunder.

The board shall not make any such modification upon its own motion nor shall any application therefor be filed by either party after the expiration of two (2) years from the last day for which compensation was paid under the original award made either by agreement or upon hearing, except that applications for increased permanent partial impairment are barred unless filed within one (1) year from the last day for which compensation was paid. The board may at any time correct any clerical error in any finding or award."

The relevant facts are undisputed. Bagwell sustained a ruptured disc on September 28, 1965, the injury arising out of and in the course of his employment with Chrysler Corporation (Chrysler). A spinal fusion was required. Chrysler by an agreement approved by the Industrial Board, paid Bagwell for temporary total disability for 66 2/7 weeks, intermittently from September 28, 1965 until June 22, 1967. Bagwell on July 19, 1967 timely filed a claim with the Industrial Board for permanent partial impairment though the claim form designated the assertion as follows:

"Particulars of *disability* [emphasis supplied] whether total or partial and estimated duration thereof ————————— —————————permanent partial [these words typed in the printed form]."[1]

An award was granted on December 18, 1967. That award found that the temporary total disability terminated on June 22, 1967. The award rated Bagwell's permanent partial impairment as 27½% of the person as a whole, and ordered compensation of $45.00 per week to be paid by Chrysler for a specific period of 137½ weeks retroactive to September 28, 1965, the date of injury. Additionally, the Board found

1. An assumption is possible that Bagwell intended his claim to be for permanent partial impairment despite the printed word "disability" on the form. The Board's award is consistent with that assumption and Bagwell made no appellate attack upon that award. *See Burton* v. *Rock Road Construction Co.* (1968), 142 Ind. App. 458, 235 N.E.2d 210.

that Bagwell had refused further surgery in the form of a refusion and that Bagwell knew that without such surgery additional disability and impairment might occur. On March 21, 1968, Bagwell filed an application for review on account of a change in conditions alleging only that "the disability" had recurred and increased. No claim was made for increased "impairment". It was the Board's determination, however, after hearing, that his permanent partial impairment had increased to 37½% and Bagwell was awarded $45.00 per week for a specific period of 50 weeks again retroactive to September 28, 1965. No appellate challenge was made to that award by Bagwell.

On August 8, 1970, Bagwell filed another application for review, the ruling upon which is here involved. In this application, Bagwell again alleged that his "disability" has recurred and increased with no assertion of increased impairment. Chrysler moved that the application be dismissed as untimely, having been filed more than one year after the last date, May 2, 1968, for which compensation was paid. The motion to dismiss was granted by the single hearing member on June 28, 1973. The Full Board affirmed the dismissal on September 10, 1974, indicating in its order that the sole basis of the decision was that 26 weeks temporary total disability could not be added to "137½" weeks of permanent partial impairment so as to bring the modification application within the Statute of Limitations. It is from this order that Bagwell appeals.

Awards for impairment and for permanent total disability are governed by the schedule in the Workmen's Compensation Act (hereinafter the Act), Ind. Ann. Stat. § 22-3-3-10 (Burns Code Ed. 1974), commonly known as § 31. Part (a) of § 31 sets forth the basic compensation benefits and in five sub-sections thereof designates specific awards for amputation of various members and for complete loss of vision and hearing. Part (b) of § 31 designates in sub-sections (1), (2), (4) and (5) awards for the total or partial loss of use of various mem-

bers, partial loss of sight or hearing, and, additionally, in subsection (3) provides for an award for "injuries resulting in total permanent disability." Part (b) further provides for awards in all other cases of permanent partial impairment, and in cases of permanent disfigurement which may impair "future usefulness or opportunities".

The Board dismissed Bagwell's application because it was not filed within one year from the last date for which compensation was paid. Bagwell argues that the one year limitation is not applicable since he did not apply for increased permanent partial impairment, but rather for a change of the award to one for permanent total disability. He maintained that he filed within the permissible two year period.

Chrysler answers that Bagwell's application was not timely filed even if the two year period be considered applicable. Further, it maintains that permanent partial impairment and permanent total disability are mutually exclusive awards, and that once an award has been made for permanent partial impairment, the only possible modification is for an increase or decrease in the impairment rating. While Chrysler admits that an increase in impairment may reach the level of total disability, it asserts that such is merely a specific level of permanent partial impairment, and hence controlled by the one year limitation.

## THE APPLICATION FOR CHANGE OF CONDITION WAS NOT TIMELY FILED

Before reaching Bagwell's argument that the 2-year rather than the 1-year limitation is applicable, we must consider whether his application was filed within either period.

In determining the beginning date for the running of the 2-year limitation, § 45 clearly states that an application for modification may not be filed "after the expiration of two (2) years from the last day for which compensation was paid *under the original award made*

*either by agreement or upon hearing. . . ."* (Emphasis supplied). Under the *original* award, Chrysler was ordered to pay Bagwell compensation for a specific period of 137½ weeks, beginning September 28, 1965. Thus the last date for which compensation was paid was May 16, 1968, two years and 3 months before Bagwell filed his application.

Bagwell's argument that the 50 additional weeks awarded to him pursuant to his March 21, 1968 application for modification should be tacked to the original award period flies in the face of the unambiguous words of the statute that the *original* award is determinative of the 2-year period. Thus for purposes of the 2-year limitation, additional weeks of compensation pursuant to later modification may not be added to the period of the original award in determining the last date for which compensation was paid.

Bagwell also argues that 26 weeks of the temporary total disability compensation which he received should be tacked to the original award, thus bringing him within the 2-year period.

Section 31 of the Act provides that ". . .[t]he employee shall receive in addition to temporary total disability benefits not exceeding twenty-six (26) weeks on account of said injuries . . ." the scheduled amount for the injury. Bagwell construes this language to provide not only additional benefits, but as well, additional time for measuring the period for modification. Again, we must disagree.

Indiana has long recognized that disability and impairment are separate and distinct concepts. *Northern Indiana Power Co.* v. *Hawkins,* (1925), 82 Ind. App. 552, 146 N.E. 879; *Callahan* v. *Lovelace Truck Service* (1971), 149 Ind. App. 314, 271 N.E.2d 734. Such distinction does not necessarily preclude duplication in benefits. In fact, the legislative policy contemplates such a duplication to the extent of the first 26 weeks of temporary total disability by not allowing the employer credit for that period when a

subsequent impairment award is made. This policy duplication does not violate the prohibition found in the impairment statute (Sec. 31), which permits only a fixed percentage of wages to be paid for a fixed number of weeks as compensation for the impairment.

Although the Industrial Board normally designates the date of the initial industrial occurrence as the commencement of an award, it need not do so. *See, e.g.,* periods fixed or permitted in *Smith* v. *Brown* (1924), 81 Ind. App. 667, 144 N.E. 849; *Grant Coal Mining Co.* v. *Coleman* (1934), 98 Ind. App. 560, 187 N.E. 692; *Tom's Chevrolet Sales* v. *Curtis* (1958), 128 Ind. App. 201, 147 N.E.2d 571. Thus the Board could have chosen to date the original award for permanent partial impairment from the end of the 26-week disability period. However, the Board having set the date of the original industrial occurrence as the commencement of the period of impairment compensation, we are bound by that determination. *Milner* v. *R.C.A.* (1964), 136 Ind. App. 218, 195 N.E.2d 875, 196 N.E.2d 756 (erroneously reported twice) ; *Evans* v. *Enoco Collieries, Inc.* (1964), 137 Ind. App. 11, 202 N.E.2d 595; *Johnson* v. *Thomas & Skinner, Inc.* (1972), 153 Ind. App. 467, 287 N.E.2d 894. Bagwell's application was not filed within two years of the last date for which compensation was paid under the original award.

Nor does his application fall within the one-year period for compensable increases in permanent partial impairment. The portion of Sec. 45 pertaining to such a modification does not contain the same "original award" qualification as the two-year limitation. The permanent partial impairment provision says only that applications ". . . are barred unless filed within one (1) year from the last date for which compensation was paid." Thus successive modifications tacked to previous awards may continue to extend the period in which to apply for future increased permanent partial impairment. In order for Bagwell's application to fall within this one-year period, however, both

the 50 week additional modification and the initial 26 weeks of temporary total disability would have to be added to the original award. We have already noted that the Board was within its discretion in effectively ordering the first 26 weeks of permanent partial impairment compensation to coincide with the compensation for temporary total disability. Bagwell's application therefore does not fall within the one-year period. Consequently, we need not decide whether the 50 weeks granted as increased impairment must run consecutively rather than concurrently with the original award.

Finally, Bagwell argues that his application is timely in that the first application for modification, filed March 21, 1968, is still pending because it alleged an increase in disability and the Board found only that his impairment had increased. In support of his argument he cites *Palmeri* v. *Riggs-Sargent* (1970), 147 Ind. App. 430, 261 N.E.2d 887. That case is distinguishable. There, the injured employee had filed an original application for both temporary total disability and for permanent partial disability. At the request of the parties, the initial hearing was limited to the issue of temporary total disability, and an award made thereon. More than two years from the date of the compensable industrial accident, the employee filed a "Petition for Adjudication of Permanent Partial Disability". The appellate court held that under these circumstances, the original application remained pending over the interim, and hence the request for adjudication thereof was appropriate. Here, however, Bagwell filed a modification application alleging only that his disability had increased. Although the record of that proceeding is not before us, we do know that a determination was made that Bagwell's *impairment* had increased. Bagwell never appealed that award, nor did he request an adjudication of the disability claim. Thus his situation is more like that in *Burton* v. *Rock Road Construction Co., supra, fn. 1/,* which held that an application is deemed amended to conform to the evidence. There is no

application for a change to permanent total disability pending from the March 21, 1968 application.

Because Bagwell's application was not timely filed under either of the permissible limitations of Sec. 45, we need not decide which would govern the claim made by Bagwell in his application.

We decline Bagwell's invitation to determine the constitutionality of the one year limitation. In order to challenge the constitutionality of a statute, a plaintiff must have suffered from its alleged constitutional infirmity. *Barrows* v. *Jackson* (1953), 346 U.S. 249, 255. In an analogous situation, the United States Supreme Court held that where candidates were properly barred from the ballot under one section of the statute, they could not challenge the constitutionality of other sections, even if those sections were wholly or partly unconstitutional. *Storer* v. *Brown* (1974), 415 U.S. 724, 736-7. (*See also, Rothblum* v. *Board of Trustees of the College of Medicine and Dentistry of N. J.* (2d Cir. 1973), 474 F.2d 891, 898, plaintiffs lacked standing to challenge an allegedly discriminatory admission policy because that policy played no part in their rejection.) Bagwell's application was properly dismissed because it was not timely filed under even the maximum 2-year limitation. He lacks standing to challenge the constitutionality of the one year provision.

The decision of the Industrial Board is affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 341 N.E.2d 799.